UNITED STATES DISTRICT COURT
DISTRICT OF MAINE

| | |
|---|---|
| KRISTAL L., | ) |
| | ) |
|     Plaintiff | ) |
| | ) |
| v. | )   No. 2:18-cv-00084-JAW |
| | ) |
| NANCY A. BERRYHILL, | ) |
| *Acting Commissioner of Social Security,* | ) |
| | ) |
|     Defendant | ) |

## REPORT AND RECOMMENDED DECISION[1]

This Social Security Disability ("SSD") and Supplemental Security Income ("SSI") appeal raises the question of whether the administrative law judge ("ALJ") supportably found the plaintiff capable of performing work existing in significant numbers in the national economy. The plaintiff seeks remand on the basis that, among other things, the ALJ's mental residual functional capacity ("RFC") determination is unsupported by substantial evidence. *See* Plaintiff's Statement of Errors ("Statement of Errors") (ECF No. 15) at 14-15. I agree and, accordingly, recommend that the court vacate the commissioner's decision and remand this case for further proceedings consistent herewith. I need not and do not reach the plaintiff's remaining points of error.

Pursuant to the commissioner's sequential evaluation process, 20 C.F.R. §§ 404.1520, 416.920; *Goodermote v. Sec'y of Health & Human Servs.*, 690 F.2d 5, 6 (1st Cir. 1982), the ALJ

---

[1] This action is properly brought under 42 U.S.C. §§ 405(g) and 1383(c)(3). The commissioner has admitted that the plaintiff has exhausted her administrative remedies. The case is presented as a request for judicial review by this court pursuant to Local Rule 16.3(a)(2), which requires the plaintiff to file an itemized statement of the specific errors upon which she seeks reversal of the commissioner's decision and to complete and file a fact sheet available at the Clerk's Office, and the commissioner to file a written opposition to the itemized statement. Oral argument was held before me pursuant to Local Rule 16.3(a)(2)(D), requiring the parties to set forth at oral argument their respective positions with citations to relevant statutes, regulations, case authority, and page references to the administrative record.

1

found, in relevant part, that the plaintiff met the insured status requirements of the Social Security Act through December 31, 2019, Finding 1, Record at 55; that she had the severe impairments of obesity, type 2 diabetes, chronic myofascial pain, fibromyalgia, depression and post-traumatic stress disorder ("PTSD"), Finding 3, *id*.; that she had the RFC to perform light work as defined in 20 C.F.R. §§ 404.1567(b) and 416.967(b), except that she had to be allowed to alternate between sitting and standing and/or walking every hour, but would not need to leave the work station, could occasionally reach overhead and operate foot controls, could occasionally climb ramps and stairs, stoop, and crouch, could never climb ladders, ropes, or scaffolds, kneel, crawl, or work near unprotected heights or dangerous machinery, could attend and concentrate for two-hour blocks of time, could have no more than minimal changes in work settings and routines, needed to avoid work involving a variety of instructions or tasks but could understand and carry out simple one- and two-step instructions, could understand and carry out "detailed but uninvolved" written or oral instructions involving a few concrete variables from standardized situations, could make simple work-related decisions, and could not do work that required interaction with the public, Finding 5, *id*. at 57; that, considering her age (35 years old, defined as a younger individual, on her alleged disability onset date, May 30, 2014), education (at least high school), work experience (transferability of skills immaterial), and RFC, there were jobs existing in significant numbers in the national economy that she could perform, Findings 7-10, *id*. at 59; and that she, therefore, had not been disabled from May 30, 2014, her alleged disability onset date, through the date of the decision, February 15, 2017, Finding 11, *id*. at 60-61. The Appeals Council declined to review the decision, *id*. at 1-4, making the decision the final determination of the commissioner, 20 C.F.R. §§ 404.981, 416.1481; *Dupuis v. Sec'y of Health & Human Servs.*, 869 F.2d 622, 623 (1st Cir. 1989).

The standard of review of the commissioner's decision is whether the determination made is supported by substantial evidence. 42 U.S.C. §§ 405(g), 1383(c)(3); *Manso-Pizarro v. Sec'y of Health & Human Servs.*, 76 F.3d 15, 16 (1st Cir. 1996). In other words, the determination must be supported by such relevant evidence as a reasonable mind might accept as adequate to support the conclusion drawn. *Richardson v. Perales,* 402 U.S. 389, 401 (1971); *Rodriguez v. Sec'y of Health & Human Servs.*, 647 F.2d 218, 222 (1st Cir. 1981).

The ALJ reached Step 5 of the sequential evaluation process, at which stage the burden of proof shifts to the commissioner to show that a claimant can perform work other than her past relevant work. 20 C.F.R. §§ 404.1520(g), 416.920(g); *Bowen v. Yuckert*, 482 U.S. 137, 146 n.5 (1987); *Goodermote*, 690 F.2d at 7. The record must contain substantial evidence in support of the commissioner's findings regarding the plaintiff's RFC to perform such other work. *Rosado v. Sec'y of Health & Human Servs.*, 807 F.2d 292, 294 (1st Cir. 1986).

The statement of errors also implicates Step 4 of the sequential evaluation process, at which stage the claimant bears the burden of proving inability to return to past relevant work. 20 C.F.R. §§ 404.1520(f), 416.920(f); *Yuckert*, 482 U.S. at 146 n.5. At this step, the commissioner must make findings of the plaintiff's RFC and the physical and mental demands of past work and determine whether the plaintiff's RFC would permit performance of that work. 20 C.F.R. §§ 404.1520(f), 416.920(f); Social Security Ruling 82-62 ("SSR 82-62"), reprinted in *West's Social Security Reporting Service* Rulings 1975-1982, at 813.

## I. Discussion

Among other arguments, the plaintiff seeks remand on the basis that, in determining her mental RFC, the ALJ improperly relied on the opinion of an agency nonexamining consultant, David R. Houston, Ph.D., that was superseded by material new evidence and, after rejecting the opinion of treating mental health provider Terri Quatrano-Simpson, L.C.S.W., filled the void by

3

interpreting raw medical evidence. *See* Statement of Errors at 2, 4, 14-15; *see also, e.g.*, *Gordils v. Sec'y of Health & Human Servs.*, 921 F.2d 327, 329 (1st Cir. 1990) (Although an ALJ is not precluded from "rendering common-sense judgments about functional capacity based on medical findings," she "is not qualified to assess residual functional capacity based on a bare medical record.").

The commissioner contends that remand is unwarranted because (i) the plaintiff fails to identify what evidence the ALJ wrongly interpreted or any "limitations the ALJ should have included[,]" (ii) "the ALJ did not use her own lay judgment in arriving at the RFC," but, rather, relied on the Houston opinion, (iii) the ALJ explained that observations of the plaintiff's mental status were not supportive of a conclusion that she lacked the abilities described in the RFC finding, (iv) the plaintiff has presented no evidence, apart from a new diagnosis of PTSD, that she had any symptoms or limitations different from those addressed by Dr. Houston, whose consideration of her anxiety necessarily included consideration of PTSD symptoms, and (v) the plaintiff has not separately challenged either the ALJ's discounting of her subjective statements or her assignment of little weight to the Quatrano-Simpson opinion. Defendant's Opposition to Plaintiff's Statement of Errors ("Opposition") (ECF No. 16) at 14-17.

I conclude that the ALJ's assessed mental RFC is unsupported by substantial evidence, warranting remand.

"[T]he amount of weight that can properly be given the conclusions of non-testifying, nonexamining physicians will vary with the circumstances, including the nature of the illness and the information provided the expert." *Rose v. Shalala*, 34 F.3d 13, 18 (1st Cir. 1994) (citations and internal quotation marks omitted). "In some cases, written reports submitted by

nontestifying, nonexamining physicians cannot alone constitute substantial evidence, although this is not an ironclad rule." (citations and internal quotation marks omitted).

"This court has noted that there is no bright-line test of when reliance on a nonexamining expert consultant is permissible in determining a claimant's physical or mental RFC, although factors to be considered include the completeness of the consultant's review of the full record and whether portions of the record unseen by the consultant reflect material change or are merely cumulative or consistent with the preexisting record and/or contain evidence supportably dismissed or minimized by the [ALJ]." *LaFlamme v. Colvin*, No. 1:14-cv-57-DBH, 2015 WL 519422, at *8 (D. Me. Feb. 6, 2015) (citation and internal punctuation omitted).

When the plaintiff filed her concurrent SSD and SSI applications on July 3, 2014, she claimed disability based on a combination of physical and mental impairments, identifying depression, anxiety, panic disorder, and attention-deficit hyperactivity disorder as the mental conditions on which her claim was based. *See* Record at 341, 355. In his January 2, 2015, assessment, Dr. Houston found that the medical evidence of record supported a diagnosis of depression, which he deemed severe. *See id*. at 347, 361 (assessing mild restriction in activities of daily living, moderate difficulties in maintaining social functioning, moderate difficulties in maintaining concentration, persistence, or pace, and no episodes of decompensation). He then assessed the plaintiff's mental RFC, finding her capable of carrying out simple, but not complex, tasks in a normal schedule, interacting appropriately with co-workers and supervisors but not with the public, and adapting to simple changes in routine. *See id*. at 349-51, 363-65.

The ALJ's RFC determination comports with the Houston assessment. She deemed the plaintiff capable of attending and concentrating for two-hour blocks of time with no more than minimal changes in work settings and routines, understanding and carrying out simple one- and

5

two-step instructions and "detailed but uninvolved" written or oral instructions involving a few concrete variables from standardized situations, and making simple work-related decisions, but unable to do work requiring interaction with the public. *See* Finding 5, *id.* at 57.

However, the plaintiff submitted new evidence following the issuance of the Houston opinion that included notes of her Common Ties Mental Health Services ("Common Ties") case manager, notes of home-support and community-support staff of Ascentria Community Services ("Ascentria"), and the notes and opinion of L.C.S.W. Quatrano-Simpson. *See* Statement of Errors at 4, 13-14 & n.21; *see also, e.g.*, Record at 1105-15, 1271-81, 1312-23.

In a Mental Impairment Questionnaire dated July 1, 2016, L.C.S.W. Quatrano-Simpson indicated, *inter alia*, that she was treating the plaintiff for chronic PTSD, the symptoms of which were isolation, hypervigilance, intrusive thoughts, fear, avoidance, daily anxiety, and weekly panic attacks, and that the symptoms most likely to be present in a regular work environment were anxiety, panic attacks, isolation, avoidance, and nausea. *See id.* at 1317, 1319-20.

As the plaintiff observes, *see* Statement of Errors at 13-14 n.21, the Common Ties and Ascentria materials indicate that she complained of, and received support in dealing with, many of these alleged symptoms. For example, her Common Ties case manager noted the plaintiff's difficulties scheduling appointments, *see id.* at 1105, and organizing herself, *see id.* at 1108-09, 1111, and an Ascentria treatment plan dated June 14, 2016, set forth goals of assisting her with creating and following a daily routine, making a food shopping list prior to shopping to help remain within budget, processing stressors, developing and utilizing coping skills, accessing community resources to reduce isolation, learning social skills, and learning the bus system to become more independent, *see id.* at 1273.

6

This evidence, as a whole, reasonably can be viewed as calling into question Dr. Houston's findings at Step 2, including his finding that the plaintiff had only a mild restriction in activities of daily living, and, ultimately, his RFC assessment.[2]

The ALJ herself seemingly viewed this evidence as material, assessing not only a severe impairment of depression, as found by Dr. Houston, but also a severe impairment of PTSD. *Compare* Finding 3, *id*. at 55 *with id*. at 347, 361. Yet, in adopting the Houston opinion, she necessarily assessed no limitations flowing from the plaintiff's severe PTSD.

The commissioner cites *Dubord v. Colvin*, No. 2:16-cv-00035-JHR, 2016 WL 7396703, at *3 (D. Me. Dec. 20, 2016), for the proposition that Dr. Houston's consideration of anxiety necessarily included consideration of any PTSD symptoms. *See* Opposition at 16. *Dubord* is distinguishable. In that case, the court found that an ALJ's "examination of plaintiff's anxiety necessarily covered the constellation of symptoms associated with his alleged PTSD[.]" *Dubord*, 2016 WL 7396703, at *2-3 (citation and internal quotation marks omitted). In this case, by contrast, Dr. Houston did not examine anxiety in assessing the plaintiff's mental RFC.

While Dr. Houston *considered* the plaintiff's allegation of anxiety, he did not find a medically determinable anxiety impairment. *See* Record at 346-47, 360-61. Therefore, he did not assess any limitations flowing therefrom. *See id*. at 347, 361 (notation by Dr. Houston that the limitations *associated with plaintiff's depression* did not meet Listing 12.04, with cross-reference to his mental RFC assessment); *see also, e.g.*, Social Security Ruling 96-7p, reprinted in *West's Social Security Reporting Service*, Rulings 1983-1991 (Supp. 2018) ("SSR 96-7p"), at 132 ("No symptom or combination of symptoms can be the basis for a finding of disability, no matter how

---

[2] As the commissioner points out, see Opposition at 11 & n.3, Dr. Houston considered a June 2014 psychosocial assessment by Common Ties, s*ee* Record at 347, 361. However, this assessment predated the provision of services by Common Ties. *See id*. at 866-75.

7

genuine the individual's complaints may appear to be, unless there are medical signs and laboratory findings demonstrating the existence of a medically determinable physical or mental impairment(s) that could reasonably be expected to produce the symptoms.").

Nor did the ALJ incorporate any PTSD-related limitations assessed by L.C.S.W. Quatrano-Simpson into her RFC determination. While she purported to give that opinion "little weight," she did not explain how. *See* Record at 59. Insofar as appears, apart from assessing a severe impairment of PTSD, she gave it no weight, simply adopting the Houston RFC opinion, which, as noted above, predated the PTSD diagnosis, the Quatrano-Simpson opinion, the Ascentria evidence, and much of the Common Ties evidence.

While "a finding that a particular impairment is severe does not necessarily result in a finding of related limitations on the ability to perform work-related functions," *DuBois v. Berryhill*, No. 1:17-CV-00076-JDL, 2017 WL 6000340, at *4 (D. Me. Dec. 3, 2017) (rec. dec., aff'd Feb. 28, 2018) (citations and internal quotation marks omitted), the ALJ shed no light on whether she found PTSD-related limitations, if not, why not, and if so, how her RFC accounted for them. *See* Record at 55-59.[3] Nor did she indicate that she had assessed a severe PTSD impairment simply to give the plaintiff the benefit of the doubt. *See id.* Absent some reasoned explanation, her mental RFC finding cannot be discerned to be supported by substantial evidence. *See, e.g., Picard v. Berryhill*, No. 2:16-cv-00636-JHR, 2018 WL 1370681, at *3 (D. Me. Mar. 16, 2018) ("[W]hen failures to explicate and/or even address material issues prevent a reviewing court

---

[3] The brief explanation that the ALJ did provide for her mental RFC assessment skirted that issue. *See* Record at 58 (explaining that "[o]bservations of the [plaintiff]'s mental status are not supportive of a conclusion that she lacks the abilities described in the [RFC] assessment"; stating that providers more often than not noted the plaintiff to be "alert, cooperative, 'normal,' 'appropriate,' or 'stable' in mood and affect, and normal with respect to attention and concentration") (citations omitted).

from concluding that the ALJ reached a supportable result *via* an acceptable analytical pathway," reversal and remand are warranted.).[4]

This, in turn, undermined the ALJ's reliance at Step 5 on vocational testimony predicated on the flawed RFC determination, warranting remand. *See, e.g.*, *Arocho v. Sec'y of Health & Human Servs.*, 670 F.2d 374, 375 (1st Cir. 1982) (responses of a vocational expert are relevant only to the extent offered in response to hypothetical questions that correspond to the medical evidence of record).

## II. Conclusion

For the foregoing reasons, I recommend that the commissioner's decision be **VACATED** and the case **REMANDED** for proceedings consistent herewith.

## *NOTICE*

*A party may file objections to those specified portions of a magistrate judge's report or proposed findings or recommended decisions entered pursuant to 28 U.S.C. § 636(b)(1)(B) for which de novo review by the district court is sought, together with a supporting memorandum,*

---

[4] The commissioner cites *Pressey v. Berryhill*, No. 2:16-cv-00425-JDL, 2017 WL 2731308, at *6 (D. Me. June 25, 2017) (rec. dec., *aff'd* Aug. 28, 2017), *Peak v. Colvin*, No. 2:15-cv-67-JHR, 2015 WL 7681256, at *2 (D. Me. Nov. 24, 2015), and *Davis v. Colvin*, No. 1:14-cv-343-JHR, 2015 WL 3937423, at *4 (D. Me. June 25, 2015), for the proposition that the plaintiff's failure to point to any evidence that the ALJ wrongly interpreted or to identify any limitations that the ALJ should have included in assessing her RFC is fatal to her bid for remand. *See* Opposition at 14, 16. Those cases are distinguishable in that they do not involve an ALJ's failure to provide an adequate explanation for her reliance on the opinion of an agency nonexamining consultant who did not have the benefit of review of seemingly material evidence postdating his opinion. *Compare Pressey*, 2017 WL 2731308, at *5 (no reversible RFC error when ALJ gave claimant the "benefit of the doubt" in deeming him more physically restricted than had any expert whose opinion was of record); *Peak*, 2015 WL 7681256, at *3 (no reversible RFC error when ALJ assessed an RFC more favorable to the claimant than the evidence would otherwise support); *Davis*, 2015 WL 3937423, at *4 (same); *cf. Staples v. Berryhill*, No. 1:16-cv-00091-GZS, 2017 WL 1011426, at *4-5 (D. Me. Mar. 15, 2017) (rec. dec., *aff'd* Mar. 30, 2017) (reversible error in assessing the claimant's mental RFC when, rather than giving the claimant "the benefit of the doubt" or assessing an RFC more favorable than the evidence would otherwise support, ALJ rejected treating physician opinion and conceded that opinions of agency nonexamining consultants that mental impairments were nonsevere were undermined by later-submitted evidence, thereby assessing a mental RFC unsupported by substantial evidence).

*within fourteen (14) days after being served with a copy thereof. A responsive memorandum shall be filed within fourteen (14) days after the filing of the objection.*

*Failure to file a timely objection shall constitute a waiver of the right to <u>de</u> <u>novo</u> review by the district court and to appeal the district court's order.*

Dated this 8th day of February, 2019.

/s/ John H. Rich III
John H. Rich III
United States Magistrate Judge